**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | |
|---|---|
| M & I BANK FSB,<br><br>Plaintiff,<br>v.<br><br>GREAT SOUTHERN RIVERWALK, INC., a Florida Corporation; RIVERWALK FREEPORT, LLC, a Florida limited liability company; GREAT SOUTHERN MANAGEMENT, LLC, a Florida limited liability company; GREAT SOUTHERN REAL ESTATE OF WALTON COUNTY, LLC, a Florida limited liability company; ANDREW FORD; TERRY HABSHEY; AMY HABSHEY; TIMOTHY DOYLE; SUNCOAST MORTGAGE CENTERS, INC., a Florida corporation; CHRIS MOSS; BRANDON SINCLAIR; SHERYL SCOTT; JENNIFER SMITH; PROGRESSIVE TITLE SERVICES, INC., a Florida corporation; JANE DOE LALANI; PALMINA LOPEZ; ALEXANDRA SAGALOVSKY; OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation; and DOES 1-100<br><br>Defendants. | Case No. 5:10-cv-313<br><br>**Jury Demand** |

**COMPLAINT**

Plaintiff M & I Bank, FSB ("Plaintiff"), by and through its attorneys, alleges and states as follows:

## A. PARTIES

1. Plaintiff is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of Wisconsin with its principal place of business in Milwaukee, Wisconsin. Plaintiff is engaged in the business of providing loan funds to individual borrowers in connection with, among other things, the purchase of residential real estate. Plaintiff funded the loans that are the subject of this action. At all times relevant herein, Plaintiff was authorized to conduct business in Florida, and held all licenses necessary to do so.

2. Upon information and belief Great Southern Riverwalk, Inc., a Florida Corporation ("Seller"), is, and at all times relevant herein was, a Florida entity organized under the laws of the State of Florida with its principal place of business in Florida. Seller is, and at all times relevant herein was, authorized to do business in the State of Florida.

3. Upon information and belief Riverwalk Freeport, LLC ("Owner") is, and at all times relevant herein was, a Florida entity organized under the laws of the State of Florida with its principal place of business in Florida. Owner is, and at all times relevant herein was, authorized to do business in the State of Florida.

4. Upon information and belief Great Southern Management, LLC ("Management Company"), is, and at all times relevant herein was, a Florida entity organized under the laws of the State of Florida with its principal place of business in Florida. Management Company is, and at all times relevant herein was, authorized to do business in the State of Florida.

5. Upon information and belief Great Southern Real Estate of Walton County, LLC ("Real Estate Company"), is, and at all times relevant herein was, a Florida entity organized under the laws of the State of Florida with its principal place of business in Florida. Real Estate Company is, and at all times relevant herein was, authorized to do business in the State of Florida.

6. Upon information and belief, defendant Andrew Ford ("Ford") is a citizen of Florida and an owner, employee, agent, and servant of Real Estate Company. Ford is also the Realtor for the subject transactions, as described below

7. Upon information and belief, defendant Terry Habshey is, and at all times relevant herein was, an individual and citizen of Florida doing business in and around Walton County, Florida. Terry Habshey is, and at all times relevant herein was an owner, employee, servant, agent and officer of the Seller, Owner, Management Company and Real Estate Company.

8. Upon information and belief, defendant Amy Habshey is, and at all times relevant herein was, an individual and citizen of Florida doing business in and around Walton County, Florida. Amy Habshey is, and at all times relevant herein was an owner, employee, servant, agent and officer of the Seller, Owner Management Company and Real Estate Company.

9. Upon information and belief, defendants Terry Habshey and Amy Habshey (collectively the "Habsheys") are, and at all times relevant herein were, husband and wife.

10. Upon information and belief, defendant Timothy Doyle ("Doyle") is, and

at all times relevant herein was, an individual and citizen of Florida doing business in and around Walton County, Florida. Doyle is, and at all times relevant herein was an owner, employee, servant, agent and officer of the Seller, Owner, Management Company and Real Estate Company.

11. Plaintiff is informed and believes, and thereon alleges, that the Seller, Owner, Management Company, and Real Estate Company are, and at all times herein mentioned were, the alter egos of the Habsheys, Doyle, and Ford, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between the Seller, Owner, Management Company, and Real Estate Company and the Habsheys, Doyle, and Ford, such that separateness has ceased to exist between the defendants. Plaintiff is informed and believes, and thereon alleges, that adherence to the fiction of the separate existence of the corporate entities, Seller, Owner, Management Company and Real Estate Company, as an entity distinct from the Habsheys, Doyle, and Ford, would permit abuse of the corporate privilege and would serve to sanction fraud.

12. Upon information and belief defendant Suncoast Mortgage Centers, Inc. ("Broker") is, and at all times relevant herein was, a Florida corporation organized under the laws of the State of Florida with its principal place of business in New Port Richey, Florida. At all relevant times herein, Broker was engaged in the business of providing mortgage brokering services to borrowers in connection with the purchase and refinance of residential real estate. Broker brokered the loans that are the subject of this action from its offices located in Florida for citizens of and properties located in Florida.

13. Upon information and belief defendant Chris Moss ("Moss") is a citizen

of Florida and an employee, agent, and servant of Broker. Moss is also the loan officer for the subject loan brokered to Plaintiff by Broker, as described below.

14. Upon information and belief defendant Brandon Sinclair ("Sinclair") is a citizen of Florida and an employee, agent, and servant of Broker. Sinclair is also the loan officer for the subject loan brokered to Plaintiff by Broker, as described below.

15. Upon information and belief defendant Sheryl Scott ("Scott") is a citizen of Florida and an employee, agent, and servant of Broker. Scott is also the loan officer for the subject loan brokered to Plaintiff by Broker, as described below.

16. Upon information and belief defendant Jennifer Smith ("Smith") is a citizen of Florida and an employee, agent, and servant of Broker. Smith is also the loan officer for the subject loan brokered to Plaintiff by Broker, as described below.

17. Upon information and belief, defendant Progressive Title Services, Inc. ("Progressive") is, and at all times relevant herein was, a Florida entity organized under the laws of the State of Florida with its principal place of business in Florida. Progressive is, and at all times relevant herein was, authorized to do business in the State of Florida. Progressive is engaged in the business of settlement and closing services for real estate transactions, including, but not limited to placing title insurance and closing protection letters.

18. Upon information and belief, defendant Jane Doe Lalani ("Lalani") is a citizen of Florida and, at all times relevant herein, was an agent, servant, and employee of Progressive, conducting settlement and closing services on its behalf, and in doing the things alleged in this Complaint, Lalani was acting within the course and scope of such

agency, service and employment and with the knowledge, permission and consent of Progressive.

19. Upon information and belief, defendant Palmina Lopez ("Lopez") is a citizen of Florida and, at all times relevant herein, was an agent, servant, and employee of Progressive, conducting settlement and closing services on its behalf, and in doing the things alleged in this Complaint, Lopez was acting within the course and scope of such agency, service and employment and with the knowledge, permission and consent of Progressive.

20. Upon information and belief, defendant Alexandra Sagalovsky ("Sagalovsky") is a citizen of Florida and, at all times relevant herein, was an agent, servant, and employee of Progressive, conducting settlement and closing services on its behalf, and in doing the things alleged in this Complaint, Sagalovsky was acting within the course and scope of such agency, service and employment and with the knowledge, permission and consent of Progressive.

21. Plaintiff is informed and believes, and thereon alleges, that Progressive is, and at all times herein mentioned was, the alter ego of Sagalovsky, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Progressive and Sagalovsky, such that separateness has ceased to exist between the defendants. Plaintiff is informed and believes, and thereon alleges, that adherence to the fiction of the separate existence of the Progressive, as an entity distinct from Sagalovsky, would permit abuse of the corporate privilege and would serve to sanction fraud.

22. Upon information and belief, defendant Old Republic National Title

Insurance Company ("Old Republic") is, and at all times relevant herein was, a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota. Old Republic is, and at all times relevant herein was authorized to do business in the State of Florida. Plaintiff is informed and believes and thereon alleges that Old Republic is engaged in the business of issuing title insurance, insured closing protection letters and other related services.

23. Defendants John and Jane Doe 1 through 100 are individuals and/or entities and, as used herein, are fictitious names used to designate defendants whose true names and relationship to this case are not fully known by Plaintiff at this time. Plaintiff asks leave of this Court to later amend its pleadings in this action to include appropriate supplemental allegations setting forth the true identities and interests of these unidentified parties. Upon information and belief, Plaintiff alleges one or more of these defendants caused certain acts to occur in Walton County Florida, which form the basis of Plaintiff's Complaint. Plaintiff will amend this Complaint to reflect the true names and identities of such individuals as such names become known to it.

24. Upon information and belief, each defendant whether specifically named or designated herein as DOE, was the agent, representative, servant, employee, principal, joint venture, co-conspirator, management company and/or representative of each of the remaining co-defendants, and in doing the acts hereinafter alleged, was acting within the course and scope of said agency, employment, joint venture, conspiracy, alter ego, agreement, management company agreement and/or service with the approval, knowledge, authority, permission and/or consent of the remaining Defendants.

**B. JURISDICTION AND VENUE**

25. This court has jurisdiction under 28 USC § 1332, in that it is a civil action between corporations and citizens of different states in which the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars ($75,000.00). Venue is proper in that Defendants are subject to personal jurisdiction in this district at the time the action is commenced. In addition, the real property that is the subject of this litigation is located in Walton County, Florida.

**C. FRAUD SCHEME**

26. To generate an appearance of interest in and fund the construction of buildings and infrastructure for a master planned development located in Riverwalk Circle Phase I, in Freeport, Walton County, Florida ("Riverwalk"), the Seller, Owner, and Management Company and Real Estate Company recruited straw-buyers to purchase unimproved lots at Riverwalk. These entities paid the straw-buyers' monthly mortgage payments, and paid the straw-buyers the amount represented as their down payment identified as their Earnest Money Deposit ("EMD"). All of the loans were brokered by Broker and all of the transactions were closed by Progressive. Defendants wrongfully extracted funds from each and every transaction through conversion, fees and false liens. The scheme fell apart when efforts to create interest in Riverwalk failed and the entities went broke and stopped making payments.

**D. PURCHASE TRANSACTIONS, SUBMISSION OF LOAN APPLICATION PACKAGE BY BROKER TO PLAINTIFF, AND THE LOAN**

**(1) PAGE LOAN**

27. On or about September 14, 2007, Steven Page ("Page") entered into a

purchase agreement with Seller to purchase Lot 221 in Riverwalk for $237,000 ("Page Property"). The purchase contract represents that Page deposited $47,000 as EMD with Progressive.

28. In or about September 2007, Scott of Broker, from its Florida offices, completed or caused to be completed form 1003 Uniform Residential Loan Application ("Application") and processed, generated, created, and compiled additional documentation, including, but not limited to, documentation reflecting income, employment, and other financial records of and on behalf of Page, including documents comprising the purchase agreement and a copy of the EMD cashier's check (the Application and such documentation are hereinafter collectively referred to as "Loan Application Package"), and submitted the Loan Application Package to Plaintiff for consideration for funding Page's purchase of the Page Property.

29. Based on the representations in the Loan Application Package, Plaintiff approved Page's purchase loan for the Page Property.

30. On or about November 7, 2007, the closing was conducted by *John Doe or Jane Doe* Lalani of Progressive. The purchase was financed with the EMD of $47,400, seller contribution of $7,908.29, and a first mortgage loan from Plaintiff of $189,600 ("Loan").

31. The Loan funded a commission to the Realtor, Suncoast Realty & Associates, which received $20,000 at closing, and its agent is Enrique Castillo. The Loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, and there was a payout of $95,700 to Owner, and a deposit of $32,000 to an escrow account

held by Colonial Bank to be used for infrastructure development at Riverwalk.

**(2) SULLIVAN LOANS**

32. On September 13, 2007, Michael Sullivan ("Sullivan") entered into purchase agreements with Seller to buy Lots 245 & 246 for $216,000 & $226,000 ("Sullivan Properties"), respectively. Sullivan intended to build one vacation home on both lots. The purchase contracts represented that Sullivan deposited $45,200 and $43,200 as EMD for Lots 245 & 246, respectively, with Progressive.

33. Moss of Broker, from its Florida offices, completed or caused to be completed the Loan Application Package on behalf of Sullivan, included the purchase agreements and a copy of the EMD cashier's checks, and submitted the Loan Application Package to Plaintiff for consideration for funding Sullivan's purchase of the Sullivan Properties.

34. Based on the representations in the Loan Application Package, Plaintiff approved Sullivan's purchase loans for the Sullivan Properties.

35. On October 23, 2007, the closing was conducted by Sagalovsky, on behalf of Progressive.

36. The purchase of Lot 245 was financed with the EMD of $43,200, seller contribution of $7,577.35, additional funds of $10,597.80 from Sullivan, and a first mortgage loan from Plaintiff of $161,975. The loan funded a commission to the Real Estate Company and Ford of $6,489. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $87,558.45 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure

development at Riverwalk.

37. The purchase of Lot 246 was financed with the EMD of $45,200, seller contribution of $7,782.39, additional funds of $11,172.80 from Sullivan, and a first mortgage loan from Plaintiff of $169,400. The loan funded a commission to the Real Estate Company and Ford of $6,780. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $94,983.41 to Owner; and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

**(3) ALBERTI LOANS**

38. On September 13, 2007, Michael Alberti ("Alberti") entered into purchase agreements with Seller to buy Lots 80 & 81 for $237,000 and $242,000 ("Alberti Properties"), respectively. Alberti intended to build one vacation home on both lots. The purchase contracts represented that Sullivan deposited $71,100 and $72,600 as EMD for Lots 80 & 81, respectively, with Progressive.

39. Smith of Broker, from its Florida offices, completed or caused to be completed the Loan Application Package on behalf of Alberti, included the purchase agreements and a copy of the EMD cashier's checks, and submitted the Loan Application Package to Plaintiff for consideration for funding Alberti's purchase of the Alberti Properties.

40. Based on the representations in the Loan Application Package, Plaintiff approved Alberti's purchase loans for the Alberti Properties.

41. On or about December 28, 2009, Lopez and Sagalovsky, on behalf of

Progressive, conducted the closing for both loans.

42. The purchase of Lot 80 was financed with the EMD of $71,100, seller contribution of $7,577.35, and a first mortgage loan from Plaintiff of $177,726. Alberti received $11,884.18 at closing. The loan funded a commission to the Real Estate Company and Ford of $7,110. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $78,800.15 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

43. The purchase of Lot 81 was financed with the EMD of $72,600, seller contribution of $9,034.12, and a first mortgage loan from Plaintiff of $181,475. Alberti received $12,185.99 at closing. The loan funded a commission to the Real Estate Company and Ford of $7,260. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $81,967.76 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

**(4) TOFT LOANS**

44. On September 26, 2007, Daniel Toft ("Toft") entered into purchase agreements with Seller to buy Lots 56 & 57 for $289,000 and $279,000 ("Toft Properties"), respectively. Toft intended to build one vacation home on both lots. The purchase contracts represented that Toft deposited $72,250 and $69,750 as EMD for Lots 56 & 57, respectively, with Progressive.

45. Moss of Broker, from its Florida offices, completed or caused to be

completed the Loan Application Package on behalf of Toft, included the purchase agreements and a copy of the EMD cashier's checks, and submitted the Loan Application Package to Plaintiff for consideration for funding Toft's purchase of the Toft Properties.

46. Based on the representations in the Loan Application Package, Plaintiff approved Toft's purchase loans for the Toft Properties.

47. On or about December 28, 2009, Sagalovsky, on behalf of Progressive, conducted the closing for both loans.

48. The purchase of Lot 56 was financed with the EMD of $71,100, seller contribution of $10,153.07, additional funds of $29.88 from Toft, and a first mortgage loan from Plaintiff of $216,721. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $126,459.81 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

49. The purchase of Lot 57 was financed with the EMD of $69,750, seller contribution of $9,897.80, additional funds of $35.88 from Toft and a first mortgage loan from Plaintiff of $209,222. The loan funded a commission to the Real Estate Company and Ford of $7,260. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $119,585.08 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

**(5) TANTILLO LOAN**

50. On or November 8, 2007, Michael Tantillo ("Tantillo") entered into a

purchase agreement with Seller to purchase Lot 214 in Riverwalk for $231,000 ("Tantillo Property"). The purchase contract represents that Page deposited $46,200 as EMD with Progressive.

51. Scott of Broker, from its Florida offices, completed or caused to be completed the Loan Application Package on behalf of Tantillo, included the purchase agreements and a copy of the EMD cashier's checks, and submitted the Loan Application Package to Plaintiff for consideration for funding Tantillo's purchase of the Tantillo Property.

52. Based on the representations in the Loan Application Package, Plaintiff approved Tantillo's purchase loan for the Tantillo Property.

53. On or about January 4, 2008, the closing was conducted by Sagalovsky of Progressive. The purchase was financed with the EMD of $46,200, seller contribution of $8,841.29, and a first mortgage loan from Plaintiff of $184,800 ("Tantillo Loan").

54. The Tantillo Loan funded a commission to the Real Estate Company and Ford of $6,930. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $97,966.05 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk

**(6) PRETELT LOANS**

55. On November 21, 2007, Julio Pretelt ("Pretelt") entered into purchase agreements with Seller to buy Lots 1 & 2 for $252,000 each ("Pretelt Properties"), respectively. The purchase price for Lot 2 was later reduced to $244,000. Pretelt

intended to build one vacation home on both lots. The purchase contracts represented that Pretelt deposited $75,600 and $73,200 as EMD for Lots 1 & 2, respectively, with Progressive.

56. Scott of Broker, from its Florida offices, completed or caused to be completed the Loan Application Package on behalf of Pretelt, included the purchase agreements and a copy of the EMD cashier's checks and submitted the Loan Application Package to Plaintiff for consideration for funding Pretelt's purchase of the Pretelt Properties.

57. Based on the representations in the Loan Application Package, Plaintiff approved Pretelt's purchase loans for the Pretelt Properties.

58. On or about February 15, 2008, Alexandra Sagalovsky, on behalf of Progressive, conducted the closing for both loans.

59. The purchase of Lot 1 was financed with the EMD of $75,600, seller contribution of $10,946.88, and a first mortgage loan from Plaintiff of $176,400. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $86,888.43 to Owner, and a deposit of $32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

60. The purchase of Lot 2 was financed with the EMD of $73,200, seller contribution of $4,880, additional funds of $6,301.27 from Pretelt and a first mortgage loan from Plaintiff of $170,800. The loan funded a commission to the Real Estate Company and Ford of $7,320. The loan paid off a first lien mortgage of $35,000, a second lien mortgage of $2,000, a payout of $87,282.05 to Owner, and a deposit of

$32,000 to an escrow account held by Colonial Bank to be used for infrastructure development at Riverwalk.

**E. <u>SUBMISSION OF AND APPROVAL OF LOAN</u>**

61. Broker and its loan officers were authorized to submit Loan Application Packages to Plaintiff for consideration for funding pursuant to a Mortgage Broker Agreement ("Agreement") wherein, among other things, Broker represented, warranted and covenanted that all of the information and documents, including but not limited to the Loan Application Package, submitted to Plaintiff for consideration of funding a mortgage obligation, contained true and valid information, without any exception or limitation whatsoever, (a true and correct copy of the Agreement is attached hereto as **Exhibit A** and is incorporated herein as if fully set forth), as follows:

> **9. General Representations, Warranties and Covenants of Broker.** As an inducement to M&I to enter into this Agreement and to consummate the transactions contemplated hereunder, Broker represents, warrants and covenants to M&I as of the date each application for a Mortgage Loan is submitted to M&I and as of the closing of each Mortgage Loan under this Agreement as follows:
>
> . . .
>
> **e. Application Submissions.** Broker represents and warrants that all information provided to M&I in connection with the submission of an application for a Mortgage Loan, including without limitation, the contents of each application, is true, correct and complete and fairly presents the financial condition of the Applicant and does not contain any false or misleading information.

62. In addition, pursuant to the Agreement, Broker is to indemnify and hold harmless Plaintiff for any and all breaches of the Agreement, as follows:

> **11. Indemnification.** Broker shall indemnify and hold harmless M&I and its successors and assigns from and against any loss, claim, liability, expense, penalty or other damage of any kind (including reasonable attorneys' fees) (each a "Claim") incurred by reason of or arising out of or in connection with (a) Broker's breach of any representation, warranty or covenant contained in this Agreement, (b) Broker's breach of any provision of this Agreement or failure to perform any obligation required hereunder, or (c) any Claim asserted by a borrower under a Mortgage Loan as to which the borrower alleges any damage or loss as the result of any action or inaction on the part of Broker or its Agents, or any violation by Broker or its Agents of any federal, state or local statute, regulation, rule or ordinance, or any failure to communicate information to the borrower.
>
> **14. Miscellaneous.**
>
> . . .
>
> **(h) Attorney Fees**. If legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provision of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys fees and other costs incurred in that action or proceeding, in addition any other relief to which it or they may be entitled.

## F. <u>CLOSING OF THE LOAN</u>

63. In conducting the closing, Progressive & its employees ("Settlement Agent") assumed a fiduciary duty to Plaintiff to, among other things, comply with Plaintiff's Closing Instructions, and, in addition, provide Plaintiff full disclosure of all information that may affect its decision to fund the Subject Loans. Plaintiff relied on the Settlement Agent's compliance with its fiduciary duty and certification of compliance with the Closing Instructions in approving the transaction, transferring funds to Settlement Agent, and issuing final authority for disbursement of Plaintiff's funds. The Settlement Agent is compensated for closing and escrow services from the Loan funds,

the amount which is identified in the HUD-1 Settlement Statement.

64. Prior to and in connection with the funding and closing of each of the Subject Loans, Plaintiff issued Closing Instructions to the Settlement Agent, which were signed on behalf of Progressive, that required, among other things, that disbursements be made only to individuals and entities identified on the HUD-1 approved by Plaintiff, and only to accept funds from Borrowers, as follows:

> Thank you for your assistance in the closing of this transaction, As our Closing Agent you must ensure that all conditions and requirements contained in these instructions, including but not limited to, proper title to the property and indicated lien positions are met. You are obligated to obtain whatever documentation is required in order to satisfy our requirements. **You must close this mortgage loan in accordance with these instructions using the enclosed documents**. These instructions consist of four pages.
>
> . . .
>
> **Additional Instructions:**
>
> . . .
>
> **If you determine this loan cannot close in accordance with these instructions for any reason do no proceed with the closing without written instructions from M&I Bank FSB.**
>
> . . .
>
> If this loan is owner occupied and the closing agent has knowledge that the borrower does not intend to occupy the property, the closing agent is required to suspend the closing and obtain written authorization from Lender to proceed.
>
> The closing agent is required to notify the Lender of any material facts that might influence the Lender's decision to make the loan. Material facts include, but are not limited to, adverse changes in the value of the property, changes to the purchase contract, contribution of funds by persons other than the borrower, pay outs not supported by recorded instruments against title or pay outs not specifically authorized in the closing instructions, payoff of any

> liens recorded against title within the 3 months prior to closing, or other issues which may affect the lending decision. Further, the closing agent is required to notify the Lender if the closing agent discovers that any party to the transaction has made a misrepresentation.
>
> The Closing Agent should only accept funds directly from the borrower and, if the loan is qualified on verified assets, the Lender requires that the funds are drawn against the borrower's verified account. In the event a cashier's check or similar instrument is presented by the borrower or on behalf of the borrower, the Lender requires complete sourcing of the funds to ensure the funds belong to the borrower.
>
> The Closing Agent must suspend the closing and obtain written authorization from the Lender to proceed if the Closing Agent has knowledge that any of the down payment is not from the borrower's own funds or a (Lender-approved) bona fide gift or is deposited by a person other than the borrower.
>
> If the closing agent has knowledge or belief that any document has been tampered with, generated falsely, contains a fictitious name, contains an incorrect or falsified date, contains different names and addresses from the same party, or any party's handwriting is not consistent throughout the file, the closing agent is required to suspend the closing and the closing agent must obtain written authorization from the Lender to proceed.
>
> …If for any reason Closing Agent is not able to or fails to disburse loan proceeds in accordance with the preceding or the express written instruction setting forth a different process, the Closing Agent shall immediately notify M&I Bank FSB of that fact and return the loan proceeds to M&I Bank FSB via wire transfer.

65. Plaintiff's Closing Instructions also contains a provision for Progressive's indemnity of Plaintiff, including reimbursement of attorneys' fees and costs, for the Settlement Agent's failure to follow the Closing Instructions

> Closing Agent agrees, at its sole cost and expense, to defend, indemnify, and hold M&I Bank FSB and its directors, officers, shareholders, partners, employees, agents, servants, representatives, contractors, subcontractors, affiliates, subsidiaries, successors, an assigns harmless from and against any and all

> claims, suits , liabilities, administrative or judicial actions or proceedings, obligations, debts, damages, losses, costs, expenses, awards, amounts paid in settlement, foreseeable and unforeseeable consequential damages, litigation costs, attorney fees, and investigation costs, of whatever kind or nature, and whether or not incurred in connection with any judicial or administrative proceedings that are asserted against M&I Bank FSB incurs as a result of or arising from Closing Agent's breach of any of its obligations under these closing instructions.

## G. BORROWER MISREPRESENTATIONS & BREACH OF BROKER AGREEMENT & CLOSING INSTRUCTIONS

66. Upon post closing audit and investigation, it was discovered that the Loan Application Packages submitted on behalf of Borrowers by Broker to Plaintiff contained numerous misrepresentations, including, but not limited to, inflated income, false employment, liability misrepresentations, bank account and asset misrepresentations, down payment and loan contribution by Borrower misrepresentations, occupancy misrepresentation, intent to make monthly mortgage payments and undisclosed consideration, undisclosed real property purchases and ownership along with mortgage and other related obligations, and that supporting documents were false and phony.

67. Settlement Agent was required to accept funds only from borrowers, from an institution identified in the Loan Application Package, and verify that such funds were drawn on the institution.

68. In violation of the Closing Instructions, Settlement Agent accepted funds that were to be, and were represented to have been, contributed by Borrowers from others, including, but not limited to, the Seller, Owner, and Management Company.

69. Instead of informing Plaintiff of Settlement Agent's inability to follow the Closing Instructions or that fraud was afoot, Settlement Agent certified that all

instructions had been followed, when Settlement Agent knew that they were certified with reckless disregard for whether or not all of the Closing Instructions had been followed.

70. If Plaintiff had known that information in the Loan Application Packages were false and/or that funds were not being contributed by Borrowers, that Borrowers were purchasing or had recently purchased additional properties, that loans were brokered by Broker and closed by Settlement Agent, and/or Borrowers were receiving undisclosed compensation and consideration, all of which were required to be disclosed by Broker and Settlement Agent to Plaintiff, Plaintiff would not have approved or funded the Loans.

### H. INSURED CLOSING PROTECTION LETTER COVERAGE

71. Old Republic issued Title Insurance and an Insured Closing Protection Letter ("ICPL"), upon which Plaintiff is a named insured, for the closing conducted by or on behalf of the Settlement Agent, and which explicitly insures Plaintiff for losses resulting from: "Fraud or dishonesty of the said Issuing Agent or Approved Attorney to handle your funds or documents in connection with such closings."

72. Plaintiff notified Old Republic of the fraud and dishonesty of its Settlement Agent in closing the Loans. Such information irrefutably provides evidence of the fraud and/or dishonesty of the Settlement Agent in closing the Loans for the purpose of Plaintiff obtaining the benefit under the ICPL.

73. Old Republic ultimately denied Plaintiff's claim without investigation.

74. In breach of its obligations under the ICPL, Old Republic engaged in conduct in order to prevent and unjustly delay payment or full payment of ICPL benefits

to Plaintiff, including, but not limited to, the following:

- Intentionally ignoring the claim for an unreasonable time;
- Failing and refusing to investigate the claim and/or investigating the claim in an effort to avoid paying coverage benefits;
- Failing and refusing to dispute any information provided by Plaintiff that Settlement Agent's conduct was fraudulent and/or dishonest under the ICPL; and
- Failing and refusing to accept or deny its obligation to Plaintiff under the ICPL for an unreasonable amount of time.

75. As a result of Old Republic's conduct, Plaintiff has been wrongfully forced to hire its own counsel to prosecute this action in order to obtain ICPL benefits and has and continues to incur damages related to prosecution of this action.

## I. DEFAULT AND FORECLOSURE OF THE LOANS

76. Following the closing of the Loans, mortgage payments were initially made by the Management Company and not the Borrowers for a period of time until the Loans went into default.

77. Thereafter, foreclosure was contemplated. However, it was determined that there was not sufficient equity in the Properties to foreclose. Therefore, Loans are a complete loss and Plaintiff has been damaged in the amount of at least $1,985.185.00, exclusive of interest, costs and attorneys' fees.

## J. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Against Great Southern Riverwalk, Inc., Riverwalk Freeport, LLC , Great Southern Management, LLC, Great Southern Real Estate of Walton County, LLC, Ford, the Habsheys, and Doyle)**

78. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

79. A requirement for Plaintiff to approve and fund the Loans was that Borrowers and not others were contributing the EMD and additional funds required at closing, if any, to the transaction. Contribution by others, if at all, was the amount identified as "Seller Contribution" contributed by Seller. Further, Defendants hid the additional consideration provided to Borrowers that their monthly mortgage obligations were being paid by and through the Management Company.

80. The representation that Seller contributed only the amount identified and previously described was false. Instead, these Defendants contributed the entire EMD and additional funds required at closing, if any, to the transaction. The fact that Defendants were contributing the Borrower's purported contribution to the transaction and that the Borrower's mortgage payments were going to be made by these Defendants was not disclosed to Plaintiff in the Purchase Agreements and specifically prohibited by Plaintiff's Closing Instructions. Defendants hid the unauthorized contribution and consideration from Plaintiff with the intent of inducing Plaintiff to approve and fund the Loans.

81. Plaintiff believed and reasonably relied upon the representations and

certification made by Defendants that the only contribution made the transaction was the amount of the "Seller Contribution", if any, which induced Plaintiff to approve and fund the Loans. Had Plaintiff known the true facts, it would not have approved and funded the Loans.

82. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees. In addition, the conduct of Defendants evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

**SECOND CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against Great Southern Riverwalk, Inc., Riverwalk Freeport, LLC , Great Southern Management, LLC, Great Southern Real Estate of Walton County, LLC, Ford, the Habsheys, and Doyle)**

83. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

84. A requirement for Plaintiff to approve and fund the Loans was that Borrowers and not others were contributing the EMD and additional funds required at closing, if any, to the transaction. Contribution by others, if at all, was the amount identified as "Seller Contribution" contributed by Seller. Further, Defendants hid the additional consideration provided to Borrowers that their monthly mortgage obligations were being paid by and through the Management Company.

85. Defendants misrepresented that Seller contributed only the amount

identified and previously described. Instead, these Defendants contributed the entire EMD and additional funds required at closing, if any, to the transaction. The fact that Defendants were contributing the Borrower's purported contribution to the transaction and that the Borrower's mortgage payments were going to be made by these Defendants was not disclosed to Plaintiff in the Purchase Agreements and specifically prohibited by Plaintiff's Closing Instructions.

86. Defendants knew or should have known of the falsity of the aforementioned material misrepresentations.

87. Plaintiff believed and reasonably relied upon the representations and certification made by Defendants that the only contribution made the transaction was the amount of the "Seller Contribution", if any, which induced Plaintiff to approve and fund the Loans. Had Plaintiff known the true facts, it would not have approved and funded the Loans.

88. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees.

**THIRD CAUSE OF ACTION**
**Negligence**
**(Against Great Southern Riverwalk, Inc., Riverwalk Freeport, LLC , Great Southern Management, LLC, Great Southern Real Estate of Walton County, LLC, Ford, the Habsheys, and Doyle)**

89. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

90. Defendants had a duty to Plaintiff to accurately and full disclose all

pertinent elements of the financing transaction and not to omit information material to Plaintiff's funding.

91. Defendants failed to exercise reasonable care and breached the duty of care in failing to disclose all pertinent elements of the transaction and omitting information material to Plaintiff's funding.

92. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

93. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

94. Settlement Agent closed the Loans without following Plaintiff's Closing Instructions and failed to notify Plaintiff of the irregularity, fraudulent conduct and additional consideration paid to Borrowers when it failed to accept a down payment only from Borrowers. Without reasonable grounds to believe that it complied with the Closing Instructions and/or with reckless disregard for the truth, Settlement Agent certified that all of the Closing Instructions were followed and submitted the certified Closing Instructions to Plaintiff to induce Plaintiff, and which did induce Plaintiff, to fund the Loans.

95. Settlement Agent knew or should have known of the falsity of its representations.

96. Plaintiff was unaware of the falsity of the representations and justifiably relied on the representations.

97. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Negligence**
**(Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

98. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

99. Settlement Agent has a duty to follow Plaintiff's Closing Instructions and to notify Plaintiff of, among other things, any irregularities, fraudulent conduct, additional consideration paid to Borrowers, illegal kickbacks, and undisclosed property purchases of Borrowers and escrows.

100. Settlement agent failed to exercise reasonable care and breached the duty of care when it accepted the required down payment from other Defendants instead of Borrowers and failed to notify Plaintiff of such and other conduct.

101. Plaintiff was unaware that Settlement Agent failed to conform its conduct within the standard of care and justifiably relied on the representations that Settlement Agent's conduct was within the standard of care.

102. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

103. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

104. Settlement Agent owed Plaintiff a legal duty of undivided service and loyalty, which duty is fiduciary and/or quasi fiduciary in nature, and imposes upon Settlement Agent the highest standard of good faith.

105. Settlement Agent breached its fiduciary duty to Plaintiff by engaging in the misrepresentations, omissions, and fraudulent acts referred to herein.

106. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees. The conduct of Settlement Agent evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

**SEVENTH CAUSE OF ACTION**
**Constructive Fraud**
**(Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

107. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

108. Settlement Agent is in a confidential and fiduciary relationship with Plaintiff.

109. Settlement Agent has breached its legal or equitable duty, trust or

confidence to Plaintiff by its respective acts, omissions, or concealment.

110. Settlement Agent has gained an advantage by said breach in that it has, among other things, wrongly received compensation from Plaintiff for the closing and funding of the Loan.

111. Plaintiff justifiably relied, to its detriment, on the acts, omission, or concealment by Settlement Agent when it funded the loans.

112. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees. In addition, the conduct of Settlement Agent evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done with intent to injure Plaintiff substantially, without just cause or excuse, so that Plaintiff is entitled to punitive damages.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract**
**(Against Progressive)**

113. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

114. Progressive entered into a written agreement with Plaintiff, whereby Progressive agreed to strictly follow all of the provisions in the Closing Instructions.

115. Progressive represented that it strictly followed all of the provisions in the Closing Instructions, including, but not limited to, accepting and verifying that all amounts purportedly contributed by Borrowers, were in fact from the Borrowers, and not the other Defendants.

116. Progressive breached the terms of the Closing Instructions by allowing other Defendants to contribute undisclosed amounts to the transactions that Borrowers were to contribute and failing to inform Plaintiff of the source of the prohibited contributions, and hiding the prohibited contribution from Plaintiff.

117. Plaintiff has performed all terms, conditions and covenants required of it by the terms of the Closing Instructions.

118. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees.

**NINTH CAUSE OF ACTION**
**Contractual Indemnity**
**(Against Progressive)**

119. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

120. In the Closing Instructions, it is provided that Progressive shall indemnity Plaintiff for losses arising out of Progressive's failure to follow the Closing Instructions.

121. Plaintiff's losses as alleged herein arise out of and directly relate to Progressive's failure to follow the Closing Instructions, including but not limited to Progressive's failure to inform Plaintiff of the source of the prohibited contributions.

122. Plaintiff provided notice to Progressive of the breach of the Closing Instructions and demanded that Settlement Agent reimburse Plaintiff for any and all of its losses. Progressive refused to indemnify Plaintiff.

123. Plaintiff has incurred attorneys' fees in retaining the undersigned to represent them in this matter, for which Defendant is liable under the agreement.

**TENTH CAUSE OF ACTION**
**Breach of Contract**
**(Against Old Republic)**

124. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

125. Defendant, in connection with and as consideration for Plaintiff's procurement of Title Insurance, issued an ICPL for the benefit of Plaintiff, which obligates Old Republic to indemnify Plaintiff for the loss of its funds as the result of fraud and/or dishonesty of Settlement Agent.

126. Plaintiff has fully performed all conditions of Title Insurance and the ICPL on its part and, in accordance with its terms, gave Old Republic due and timely notice and proof of loss and is entitled to ICPL benefits.

127. Old Republic, however, has failed and/or refused to take any action under the ICPL and/or indemnify Plaintiff and pay the sums or any part that is now due and owing to Plaintiff under the ICPL.

128. Plaintiff has performed all terms, conditions and covenants required of it under the ICPL between Plaintiff and Old Republic.

129. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, exclusive of interest, costs and attorneys' fees.

**ELEVENTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against Suncoast & loan officers Moss, Sinclair, Scott, & Smith)**

130. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

131. Defendants processed, generated, compiled, created, and submitted untrue and inaccurate information of the subject Loans as set forth in the Loan Application Packages.

132. Defendants made and submitted, and/or caused to be submitted, the Loan Application Packages containing the untrue and inaccurate information, without reasonable grounds for believing them to be true and/or with reckless disregard for the truth, to induce Plaintiff to fund the Loans.

133. Plaintiff was unaware of the falsity of the representations and justifiably relied on the representations.

134. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, not including interest, fees, costs, and attorney fees.

**TWELFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Against Suncoast & loan officers Moss, Sinclair, Scott, & Smith)**

135. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

136. Defendants processed, generated, compiled, created, and submitted false information of the subject Loans as set forth in the Loan Application Packages.

137. Defendants made and submitted, and/or caused to be submitted, the Loan Application Packages containing the false information, knowing the falsity thereof, with the intent to induce Plaintiff to fund the Loans.

138. Plaintiff was unaware of the falsity of the representations and justifiably relied on the representations.

139. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, not including interest, fees, costs, and attorney fees.

**THIRTEENTH CAUSE OF ACTION**
**Negligence**
**(Against Suncoast & loan officers Moss, Sinclair, Scott, & Smith)**

140. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

141. Defendants had a duty to process, generate, compile, create, and submit true and accurate information with respect to the subject Loans.

142. Defendants failed to exercise reasonable care and breached the duty of care by submitting untrue and inaccurate information.

143. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, not including interest, fees, costs, and attorney fees.

**FOURTEENTH CAUSE OF ACTION**
**Breach of Contract**
**(Against Suncoast)**

144. Plaintiff re-alleges and incorporates by this reference all of the allegations

contained in the preceding and subsequent paragraphs, as if fully set forth herein.

145. Defendant entered into a written Agreement with Plaintiff, whereby Plaintiff agreed to fund certain loans brokered by Defendant and Defendant agreed to submit Loan Application Packages that complied with the terms, representations and warranties of the Agreement. Defendant made certain representations and warranties in connection with the Loans submitted, including representing and warranting that, *inter alia*, Borrowers' employment, income and financial condition was true, complete and accurate, and that Borrowers' contributed the amount as identified previously as EMD, intended to make monthly mortgage payments, intended to develop and reside at the Properties, and made full disclosure of all real property ownership and mortgage obligations. The Agreement also provided that Defendant would be required to repurchase loans originated in breach of the Agreement and to reimburse Plaintiff, including, but not limited to, all costs, interest payments and attorneys' fees.

146. Defendant breached the Agreement by submitting the Loan Application Packages that contained false and fraudulent information and concealed information that would have been necessary to make the information in the Loan Application Packages true, complete and accurate.

147. Plaintiff provided notice to Defendant of the breach of the Agreement and demanded, pursuant to the Agreement, that Defendant purchase the Loans or reimburses Plaintiff for any and all losses. Defendant failed and refused to perform its obligations to indemnify Plaintiff or repurchase the Loan.

148. Plaintiff has performed all terms, conditions and covenants required of it

by the terms of the Agreement.

149. As a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,985,185.00, not including interest, attorneys' fees, and costs of suit.

**FIFTEENTH CAUSE OF ACTION**
**Contractual Indemnity**
**(Against Suncoast)**

150. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

151. In the written agreement, it is provided that Defendant shall indemnity Plaintiff for, among other things, any loss arising out of Defendant's breach of the agreement.

152. Plaintiff's losses as alleged herein arise out of and directly relate to Defendant's breach of the agreement, including but not limited to Defendant's submission of the Loan Application Packages that contained false and fraudulent information.

153. Plaintiff has notified Defendant and demanded indemnification from Defendant. Defendant has failed or refused to indemnify Plaintiff.

154. Plaintiff has incurred attorneys' fees in retaining the undersigned to represent them in this matter, for which Defendant is liable under the agreement.

155. As a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,985,185.00, not including interest, fees, costs and attorneys' fees.

**SIXTEENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Against All Defendants Except Old Republic)**

156. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

157. With respect to Suncoast, this claim is plead in the alternative to Plaintiff's Ninth Cause of Action for Breach of Contract.

158. As a direct and proximate result of the acts and transactions alleged herein, Defendants have been unjustly enriched, and have obtained money, earnings and benefits from Plaintiff to which defendants are not otherwise entitled, and which they would not have obtained had the true facts been known to Plaintiff.

159. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including interest, attorneys' fees and costs.

**SEVENTEENTH CAUSE OF ACTION**
**Conspiracy to Commit Fraud**
**(Against All Defendants, except Old Republic)**

160. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

161. Plaintiff is informed and believes, and on that basis alleges, that prior to the origination of the loans, and in anticipation thereof, and at all times thereafter, Defendants, and each of them, entered into a conspiracy and agreement to commit the acts alleged herein, and at all times had knowledge of, joined in the formation of, and participated in a conspiracy with each other to defraud Plaintiff by committing the acts

and omissions alleged herein, and that said acts and omissions were committed in furtherance of said conspiracy, resulting in Plaintiff's injury and damage.

162. Plaintiff is further informed and believes, and thereon alleges, that each of the acts and conduct of Defendants, and each of them, as alleged herein, was in furtherance of the intent and purpose of the agreement and conspiracy alleged herein.

163. The conduct of Defendants, and each of them, described herein, evidences an evil mind, was intentional, knowing, malicious, done with reckless disregard for the rights of Plaintiff, and done to injure Plaintiff substantially, without just cause or excuse, so Plaintiff is entitled to recover punitive damages.

164. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in the amount of at least $1,985,185.00, not including interest, fees, costs, and attorneys' fees.

**EIGHTEENTH CAUSE OF ACTION**
**Conversion**
**(Against All Defendants, except Old Republic)**

165. Plaintiff re-alleges and incorporates by this reference all of the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

166. Through their fraudulent, wrongful and unjust conduct, the Defendants dispossessed Plaintiff of, and converted to themselves or to their benefit, Plaintiff's money in an amount not less than $1,985,185.00.

167. Plaintiff owned and had the right to possess this sum at the time of the dispossession and conversion.

168. Defendants are wrongfully exercising dominion over Plaintiff's money.

169. Between the time of Defendants' conversion and the filing of this action, Plaintiff expended time and money in pursuit of the property exclusive of attorney fees and costs associated with preparation for litigation of the case, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

**First Cause of Action** **(Intentional Misrepresentation - Against Great Southern Riverwalk, Inc., Riverwalk Freeport, LLC , Great Southern Management, LLC, Great Southern Real Estate of Walton County, LLC, Ford, the Habsheys, and Doyle)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit;

D. Punitive and exemplary damages; and

E. Such other and further relief that the Court deems just and proper.

**Second Cause of Action** **(Negligent Misrepresentation - Against Great Southern Riverwalk, Inc., Riverwalk Freeport, LLC , Great Southern Management, LLC, Great Southern Real Estate of Walton County, LLC, Ford, the Habsheys, and Doyle)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**Third Cause of Action** **(Negligence - Against Great Southern Riverwalk, Inc., Riverwalk Freeport, LLC , Great Southern Management, LLC, Great Southern Real Estate of Walton County, LLC, Ford, the Habsheys, and Doyle)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**Fourth Cause of Action** **(Negligent Misrepresentation - Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**Fifth Cause of Action** **(Negligence - Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Sixth Cause of Action</u>** **(Breach of Fiduciary Duty - Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit;

D. Punitive and exemplary damages; and

E. Such other and further relief that the Court deems just and proper.

**<u>Seventh Cause of Action</u>** **(Constructive Fraud - Against Progressive and its employee Sagalovsky, Lalani & Lopez)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit;

D. Punitive and exemplary damages; and

E. Such other and further relief that the Court deems just and proper.

**<u>Eighth Cause of Action</u>** **(Breach of Contract – Against Progressive)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Ninth Cause of Action</u> (Contractual Indemnity - Against Progressive)**

A. Damages in an amount sufficient to compensate Plaintiff for all losses to be determined at trial, including interest, costs, attorneys' fees, and such other relief as this Court may deem just and proper.

**<u>Tenth Cause of Action</u> (Breach of Contract - Against Old Republic)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Eleventh Cause of Action</u> (Negligent Misrepresentation - Against Suncoast & loan officers)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Twelfth Cause of Action</u> (Intentional Misrepresentation - Against Suncoast & loan officers Moss, Sinclair, Scott, & Smith)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit;

D. Punitive and exemplary damages; and

E. Such other and further relief that the Court deems just and proper.

**<u>Thirteenth Cause of Action</u> (Negligence - Against Suncoast & loan officers Moss, Sinclair, Scott, & Smith)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Fourteenth Cause of Action</u> (Breach of Contract - Against Suncoast)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Fifteenth Cause of Action</u> (Contractual Indemnity- Against Suncoast)**

A. Damages in an amount sufficient to compensate Plaintiff for all losses to be determined at trial, including interest, costs, attorneys' fees, and such other relief as this Court may deem just and proper.

**<u>Sixteenth Cause of Action</u> (Unjust Enrichment - Against All Defendants Except Old Republic)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit; and

D. Such other and further relief that the Court deems just and proper.

**<u>Seventeenth Cause of Action</u> (Conspiracy to Commit Fraud - Against All Defendants, except Old Republic)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit;

D. Punitive and exemplary damages; and

E. Such other and further relief that the Court deems just and proper.

**<u>Eighteenth Cause of Action</u> (Conversion - Against All Defendants, except Old Republic)**

A. Damages in an amount to be determined at trial, but no less than $1,985,185.00;

B. Pre and Post judgment interest;

C. Costs of suit;

D. Punitive and exemplary damages; and (?)

E. Such other and further relief that the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

**MURPHY & ANDERSON, P.A.**

s/ Niels P. Murphy
Niels P. Murphy, Trial Counsel
Florida Bar No. 0065552
nmurphy@murphyandersonlaw.com
Matthew B. Baggett, Trial Counsel
Florida Bar No. 0015896
mbaggett@murphyandersonlaw.com
50 North Laura Street, Suite 1675
Jacksonville, Florida 32202
PH: 904-598-9282
Fax: 904-598-9283

**Attorneys for M & I Bank FSB**